UNITED STATES *v.* NEVADA ET AL.

No. 59, Orig.   Argued April 16, 1973—Decided June 11, 1973

*Solicitor General Griswold* argued the cause for the United States. With him on the briefs were *Assistant Attorney General Frizzell, Deputy Assistant Attorney General Kiechel,* and *Harry R. Sachse.*

*E. Barrett Prettyman, Jr.,* argued the cause for defendant State of Nevada. With him on the brief were *Robert F. List,* Attorney General, *Timothy James Bloomfield,* and *Edward C. Reed, Jr. Roderick Walston,* Deputy Attorney General, argued the cause for defendant State of California. With him on the brief were *Evelle J. Younger,* Attorney General, *Carl Boronkay,* Assistant Attorney General, and *Bertram G. Buzzini* and *Dennis Antenore,* Deputy Attorneys General.*

PER CURIAM.

The United States asks leave to file a bill of complaint pursuant to this Court's original jurisdiction against the States of California and Nevada seeking a declaration of the respective rights of the States and of the United States in the Truckee River, a navigable interstate stream. The Truckee rises in the High Sierra, flows into Lake Tahoe, through which the California-Nevada boundary runs, exits on the California side of the Lake, and flows 20 miles before crossing into Nevada. It then

---

*Briefs of *amici curiae* in support of motion for leave to file bill of complaint were filed by *Robert S. Pelcyger, David H. Getches,* and *Robert D. Stitser* for the Pyramid Lake Paiute Tribe of Indians, and by *Arthur Lazarus, Jr.,* for the Association on American Indians Affairs, Inc.

*James W. Johnson, Jr.,* and *E. J. Skeen* filed a brief for Truckee-Carson Irrigation District as *amicus curiae* in opposition to motion for leave to file bill of complaint.

continues another 65 miles, through Reno and beyond, to its termination in Pyramid Lake, a desert lake 20 miles long and five miles wide, with no outlet and a water level determined by the balance or imbalance between inflow and evaporation.

The bill of complaint sought to be filed states that in 1859 the United States created a reservation for the Paiute Indian Tribe that included Pyramid Lake and an extensive area surrounding it. Allegedly, the United States intended at the time to reserve sufficient water from the Truckee River to maintain Pyramid Lake and the lower reaches of the river as a viable fishery on which the Indians could depend for their subsistence and livelihood. The level of the Lake, however, is said to have declined some 70 feet since 1906, due chiefly to upstream uses and diversions which make it imperative that the prior right of the United States to sufficient water to maintain Pyramid Lake be judicially declared as against each of the defendant States.

It appears from the bill of complaint that the United States has several other interests in the waters of the Truckee River, chief among which is the right to divert at its Derby Dam, some distance upstream from Pyramid Lake, large amounts of water from the Truckee River for transportation and use in connection with the Newlands Reclamation Project, initiated and completed by the United States pursuant to the Reclamation Act of 1902, 32 Stat. 388.† Judicial approval for this diversion was

---

†The United States also operates the Washoe Reclamation Project in Nevada and California which was established under the Washoe Project Act of 1956, 70 Stat. 775. The Act provides, inter alia, for establishing facilities to permit increased releases of water from Lake Tahoe and restoration of the Pyramid Lake fishery, 43 U. S. C. § 614c.

In addition to the right claimed for Pyramid Lake, the United States seeks to have rights decreed for it to the use of waters in and

sought by the United States in a suit brought by it in 1913 in the United States District Court for the District of Nevada. *United States* v. *Orr Water Ditch Co.,* Equity No. A–3 (1944). The decree entered in this action in 1944 authorized the United States to divert Truckee River water at Derby Dam for delivery to the Newlands Project; it also declared the prior right of the United States to sufficient Truckee River water to irrigate some 3,130 acres of bottom land and 2,745 acres of bench land on the Pyramid Lake Indian Reservation. App. D to Motion for Leave to File Complaint.

The foremost purpose of the United States in seeking to institute the present litigation is to perfect a prior water right against all upstream uses that will maintain Pyramid Lake at its current level and so prevent further deterioration of the lake and the river as a habitat for the native fish that have historically thrived in the lake and that have provided sustenance for the Tribe.

The motion for leave to file a bill of complaint is denied. The States of California and Nevada have entered into a compact with respect to their respective shares in the Truckee River water, and that compact is the subject of pending bills in Congress. H. R. 15, S. 24, 93d Cong., 1st Sess. There is now no controversy between the two States with respect to the Truckee River. The complaint, therefore, as the United States concedes, is not one alleging a case or controversy between two States within the exclusive jurisdiction of this Court, under 28 U. S. C. § 1251 (a), but a dispute between the United States and two States over which this Court has original but not exclusive jurisdiction under § 1251 (b) (2).

on national forests within the Truckee River watershed, to waters reserved as public water holes and hot springs, to the use of waters in and on public lands where the waters have heretofore been put to beneficial use on those lands, and to the use of runoff waters from the Newlands Project for use in a wildlife refuge.

We seek to exercise our original jurisdiction sparingly and are particularly reluctant to take jurisdiction of a suit where the plaintiff has another adequate forum in which to settle his claim. *Illinois* v. *City of Milwaukee,* 406 U. S. 91 (1972); *Ohio* v. *Wyandotte Chemicals Corp.,* 401 U. S. 493 (1971); *Massachusetts* v. *Missouri,* 308 U. S. 1 (1939). Here, Nevada disputes the right of the United States to sufficient water to maintain Pyramid Lake at any particular level. It also asserts that the United States is bound by the 1944 *Orr Ditch* decree to respect the private water rights of hundreds of landowners who are served by the Newlands Project and whose rights are dependent upon the right of the United States to divert Truckee River water, the decree authorizing that diversion, and a contract with the United States to deliver the water to the project. This dispute over the *Orr Ditch* decree and the existence and extent of the prior water rights of the United States with respect to the Pyramid Lake Indian Reservation is within the jurisdiction of the District Court. We need not employ our original jurisdiction to settle competing claims to water within a single State. This is particularly the case where the individual users of water in the Newlands Project, who ordinarily would have no right to intervene in an original action in this Court, *New Jersey* v. *New York,* 345 U. S. 369, 373–375 (1953), would have an opportunity to participate in their own behalf if this litigation goes forward in the District Court.

We recognize that the United States will not be able to join California as a defendant in a suit in Nevada to perfect Pyramid Reservation water rights and that, absent California's voluntary appearance, a Nevada decree would not bind that State. *Hinderlider* v. *La Plata Co.,* 304 U. S. 92, 103 (1938). But these are not determinative considerations. Under the proposed interstate

compact, California and Nevada have agreed upon their respective shares of Truckee River water. Nevada has also agreed that any rights to the use of water in Nevada by the United States or its wards are to be charged against Nevada's share of Truckee water. For the purposes of dividing the waters of an interstate stream with another State, Nevada has the right, *parens patriae*, to represent all the nonfederal users in its own State insofar as the share allocated to the other State is concerned. It is therefore doubtful at best that there is now any dispute at all between California and the United States with respect to the latter's claim to water rights at Pyramid Lake. *New Jersey* v. *New York, supra*, at 372–373; *Hinderlider* v. *La Plata Co., supra*, at 106; *Nebraska* v. *Wyoming*, 295 U. S. 40, 43 (1935); 325 U. S. 589, 612–615, 629 (1945). It is true that upstream or downstream water uses and priorities are important considerations when the judiciary equitably apportions an interstate stream, *Hinderlider* v. *La Plata Co., supra*, at 102; *Nebraska* v. *Wyoming*, 325 U. S., at 617; *Wyoming* v. *Colorado*, 259 U. S. 419, 470 (1922), but the United States would appear to have occasion to object to upstream diversions in California on the grounds of interference with its Pyramid Lake water rights only if the compact between the two States is not approved or Nevada, prior to such approval, disowns the agreed-upon division of Truckee River water. In that event, a dispute between the two States may arise, and the United States would then perhaps have some ground to participate and assert that California's share must be reduced in order to accommodate a prior, long-established use by the United States in the State of Nevada. Cf. *Arizona* v. *California*, 373 U. S. 546 (1963); *Nebraska* v. *Wyoming, supra*. Any possible dispute with California with respect to United States water uses in that State

can be settled in the lower federal courts in California; and the possibility of a ripe controversy between the United States and California with respect to Pyramid Lake water rights appears too remote to warrant granting the Government's motion for leave to file the instant complaint. We deny the motion, but without prejudice to refiling it should the posture of the litigation change in a manner that presents a more substantial basis for the exercise of our original jurisdiction.

*So ordered.*

MR. JUSTICE DOUGLAS dissents.