# SUPREME COURT OF THE UNITED STATES

NEBRASKA, ET AL. *v.* COLORADO

ON MOTION FOR LEAVE TO FILE A BILL OF COMPLIANT

No. 144, Orig.   Decided March 21, 2016

The motion for leave to file a bill of complaint is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting from the denial of motion for leave to file complaint.

Federal law does not, on its face, give this Court discretion to decline to decide cases within its original jurisdiction. Yet the Court has long exercised such discretion, and does so again today in denying, without explanation, Nebraska and Oklahoma's motion for leave to file a complaint against Colorado. I would not dispose of the complaint so hastily. Because our discretionary approach to exercising our original jurisdiction is questionable, and because the plaintiff States have made a reasonable case that this dispute falls within our original and exclusive jurisdiction, I would grant the plaintiff States leave to file their complaint.

## I

The Constitution provides that "[i]n all Cases . . . in which a State shall be [a] Party, the supreme Court shall have original Jurisdiction." Art. III, §2, cl. 2. In accordance with Article III, Congress has long provided by statute that this Court "shall have original and exclusive jurisdiction of all controversies between two or more States." 28 U. S. C. §1251(a).

Federal law is unambiguous: If there is a controversy between two States, this Court—and only this Court—has jurisdiction over it. Nothing in §1251(a) suggests that the Court can opt to decline jurisdiction over such a contro-

versy. Context confirms that §1251(a) confers no such discretion. When Congress has chosen to give this Court discretion over its merits docket, it has done so clearly. Compare §1251(a) (the Court "shall have" jurisdiction over controversies between States) with §1254(1) (cases in the courts of appeals "may be reviewed" by this Court by writ of certiorari) and §1257(a) (final judgments of state courts "may be reviewed" by this Court by writ of certiorari).

The Court's lack of discretion is confirmed by the fact that, unlike other matters within our original jurisdiction, our jurisdiction over controversies between States is exclusive. Compare §1251(a) with §1251(b) (the Court "shall have original but not exclusive jurisdiction" of other cases over which Article III gives this Court original jurisdiction). If this Court does not exercise jurisdiction over a controversy between two States, then the complaining State has no judicial forum in which to seek relief. When presented with such a controversy, "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821) (Marshall, C. J.).

Nonetheless, the Court has exercised discretion and declined to hear cases that fall within the terms of its original jurisdiction. See, *e.g., United States* v. *Nevada*, 412 U. S. 534, 537–540 (1973) (*per curiam*) (controversy between United States and individual States); *Ohio* v. *Wyandotte Chemicals Corp.*, 401 U. S. 493, 500–505 (1971) (action by a State against citizens of other States). The Court has even exercised this discretion to decline cases where, as here, the dispute is between two States and thus falls within our *exclusive* jurisdiction. See, *e.g., Arizona* v. *New Mexico*, 425 U. S. 794, 796–798 (1976) (*per curiam*). The Court has concluded that its original jurisdiction is "obligatory only in appropriate cases" and has favored a "sparing use" of that jurisdiction. *Illinois* v. *Milwaukee*, 406 U. S. 91, 93–94 (1972). The Court's reasons for trans-

forming its mandatory, original jurisdiction into discretionary jurisdiction have been rooted in policy considerations. The Court has, for example, cited its purported lack of "special competence in dealing with" many interstate disputes and emphasized its modern role "as an appellate tribunal." *Wyandotte Chemicals Corp.*, 401 U. S*.,* at 498; see *id.,* at 497–499.

I have previously applied the Court's precedents taking this discretionary approach to our original jurisdiction. See *Wyoming* v. *Oklahoma*, 502 U. S. 437, 474–475, n. (1992) (dissenting opinion) (acknowledging precedents, noting that they "have not been challenged here," and arguing against exercising jurisdiction). I have also acknowledged that "sound reasons" support that approach. *Id.,* at 475.

Because our discretionary approach appears to be at odds with the statutory text, it bears reconsideration. Moreover, the "reasons" we have given to support the discretionary approach are policy judgments that are in conflict with the policy choices that Congress made in the statutory text specifying the Court's original jurisdiction.

## II

This case involves a suit brought by two States against another State, and thus presents an opportunity for us to reevaluate our discretionary approach to our original jurisdiction.

Federal law generally prohibits the manufacture, distribution, dispensing, and possession of marijuana. See Controlled Substances Act (CSA), 84 Stat. 1242, as amended, 21 U. S. C. §§812(c), Schedule I(c)(10), 841–846 (2012 ed. and Supp. II). Emphasizing the breadth of the CSA, this Court has stated that the statute establishes "a comprehensive regime to combat the international and interstate traffic in illicit drugs." *Gonzales* v. *Raich*, 545 U. S. 1, 12 (2005). Despite the CSA's broad prohibitions,

in 2012 the State of Colorado adopted Amendment 64, which amends the State Constitution to legalize, regulate, and facilitate the recreational use of marijuana. See Colo. Const., Art. XVIII, §16. Amendment 64 exempts from Colorado's criminal prohibitions certain uses of marijuana. §§16(3)(a), (c), (d); see Colo. Rev. Stat. §18–18–433 (2015). Amendment 64 directs the Colorado Department of Revenue to promulgate licensing procedures for marijuana establishments. Art. XVIII, §16(5)(a). And the amendment requires the Colorado General Assembly to enact an excise tax for sales of marijuana from cultivation facilities to manufacturing facilities and retail stores. §16(5)(d).

In December 2014, Nebraska and Oklahoma filed in this Court a motion seeking leave to file a complaint against Colorado. The plaintiff States—which share borders with Colorado—allege that Amendment 64 affirmatively facilitates the violation and frustration of federal drug laws. See Complaint ¶¶54–65. They claim that Amendment 64 has "increased trafficking and transportation of Colorado-sourced marijuana" into their territories, requiring them to expend significant "law enforcement, judicial system, and penal system resources" to combat the increased trafficking and transportation of marijuana. *Id.*, ¶58; Brief [for Nebraska and Oklahoma] in Support of Motion for Leave to File Complaint 11–16. The plaintiff States seek a declaratory judgment that the CSA pre-empts certain of Amendment 64's licensing, regulation, and taxation provisions and an injunction barring their implementation. Complaint 28–29.

The complaint, on its face, presents a "controvers[y] between two or more States" that this Court alone has authority to adjudicate. 28 U. S. C. §1251(a). The plaintiff States have alleged significant harms to their sovereign interests caused by another State. Whatever the merit of the plaintiff States' claims, we should let this complaint proceed further rather than denying leave

THOMAS, J., dissenting

without so much as a word of explanation.

\*    \*    \*

I respectfully dissent from the denial of the motion for leave to file a complaint.